CAUSE NO. 4:17-cv-01850

| | | |
|---|---|---|
| CELESTINE HOLCOMB | § | U.S. DISTRICT COURT |
| | § | |
| VS. | § | SOUTHERN DISTRICT OF TEXAS |
| | § | |
| DELORES BARNES | § | |
| | § | HOUSTON, TEXAS DIVISION |

**PLAINTIFF'S ORIGINAL PETITION FOR
REIMBURSEMT OF CLEAN-UP COSTS OF PURCHASED REAL ESTATE
AND APPLICATION FOR TEMPORARY INJUNCTION**

**I DISCOVERY CONTROL PLAN**

1.1. Plaintiff requests a Level 2 discovery plan.

**II PARTIES**

2.1. Plaintiff is Celestine Holcomb, an individual who resides in Houston, Harris, Texas.

2.2. Individual Defendant:

Defendant Delores Barnes is an individual who resides in Houston, Harris, Texas and may be served with Citation at her residence, located at 7012 Banyan Street, Houston, Texas 77028.

**III VENUE**

3.1. At all times material to the cause of action detailed below, both plaintiff and defendant resided in Houston, Harris, Texas. Furthermore, the actions complained of below arose in whole or in part in Houston, Harris, Texas.

3.2 Congress vests federal district courts with subject-matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." [1]

Federal law includes an act of Congress or a regulation issued under an act of Congress. [2] "Federal common law as articulated in rules that are fashioned by court decisions are 'laws' as that term is used in § 1331." [3] Federal law generally includes an Act of Congress, an administrative regulation, or an executive order made pursuant to an Act of Congress. [4]

The Supreme Court has interpreted § 1331 to include three requirements before a court will exercise jurisdiction: (1) the well-pleaded complaint requirement; (2) the substantiality requirement; and (3) the centrality requirement. [5]

<u>Well-pleaded complaint requirement</u>: A federal court lacks jurisdiction over a federal question unless the plaintiff's well-pleaded complaint raises the issue. When determining whether a claim arises under federal law, a court will "examine the 'well pleaded' allegations of the complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of the United States only when the plaintiff's

---

[1] 28 U.S.C. § 1331.
[2] See *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 643 (2002) (noting that the plaintiff's claim "turns on whether the Act, or an FCC ruling issued thereunder [and therefore] falls with 28 U.S.C. § 1331's general grant of jurisdiction") (jurisdiction upheld).
[3] *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 TXS.D. 845, 850 (1985) (jurisdiction upheld).
[4] *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (jurisdiction upheld).
[5] 13D Wright & Miller § 3562, p. 174.

16

statement of his own cause of action shows that it is based upon those laws or that Constitution.'" [6]

Substantiality requirement: A federal court lacks jurisdiction over a claim based on federal law when the claim is completely frivolous. A federal court lacks jurisdiction over a claim involving federal law "only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" [7] "The test for dismissal is a rigorous one and if there is any foundation or plausibility to the claim, federal jurisdiction exists." [8]

Centrality requirement: A federal court lacks federal question jurisdiction if the federal question raised in the complaint is not sufficiently central to the plaintiff's claim. "[T]he federal law injected by the plaintiff's well-leaded complaint [must] be sufficiently central to the dispute to support federal question jurisdiction." [9] "Centrality is concerned with 'how federal' the claim must be." [10] A case generally arises under federal law when federal law creates the cause of action. [11] The Supreme Court has also recognized that a

---

[6] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (jurisdiction upheld) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (jurisdiction lacking)). See also *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 317 (2d Cir. 2000) (noting that "a state law complaint, filed in a state trial court, that tries to anticipate a defense of federal preemption will not support federal question removal jurisdiction unless the limited doctrine of complete preemption applies") (citations and internal quotations omitted). See also *Hall v. North Am. Van Lines, Inc.*, 476 F.3d 683, 687–89 (9th Cir. 2007) (discussing well-pleaded complaint rule and complete preemption).

[7] Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (jurisdiction lacking on standing grounds) (citing Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974) (jurisdiction upheld)).

[8] 13D Wright & Miller § 3564, pp. 244–45.

[9] 13D Wright & Miller § 3562, p. 174.

[10] 13D Wright & Miller § 3562, p. 174-175.

[11] Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (jurisdiction upheld); see also Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 690 (2006) (jurisdiction lacking)

17

case will arise under federal law in "certain . . . state-law claims that implicate significant federal issues." [12] Under this second test for arising under, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." [13]

Pursuant to this pleading, Section V – Causes of Action, Items 5.1 through 5.6 (notably Item 5.1 -CERCLA), Plaintiff has demonstrated that it meets the Federal Court subject-matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  "Federal common law as articulated in rules that are fashioned by court decisions are 'laws' as that term is used in § 1331."   Federal law generally includes an Act of Congress, an administrative regulation, or an executive order made pursuant to an Act of Congress.

Pursuant to this pleading, Section V – Causes of Action, Items 5.1 through 5.6 (notably Item 5.1 -CERCLA), Plaintiff has demonstrated that it meets the Supreme Court interpretations of § 1331 regarding the three requirements before a court will exercise jurisdiction: (1) the well-pleaded complaint requirement; (2) the substantiality requirement; and (3) the centrality requirement.

---

(quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U. S. 1, 27-28 (1983) (jurisdiction lacking)) ("A case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action . . . .'").
[12] Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).
[13] Id. at 314.

## IV FACTUAL BACKGROUND

4.1. This petition is for the cost reimbursement for any and all waste characterization, clean-up, disposal and labor for the clean-up of the property located at 7012 Banyan Street, Houston, Texas 77028, Lot 7, Block 4, Houston Gardens Addition, City of Houston County of Harris, Texas known as 7012 Banyan St, Houston, Texas 77028 that defendant sold to Ms. Celestine Holcomb on or about August 3, 2016.

4.2 The following is intended to summarize the preliminary environmental findings relative to the lot in question. Some of the materials requiring clean-up are not visible such as including, but not limited, to: (1) waste paint and (2) 55 gallon drums with unknown contents (probably paint, solvent, and other types of hazardous wastes). These apparently are wastes from some type of prior painting business, such as an automobile body shop. This material is buried beneath the dirt and debris located in the right rear corner of the lot. Similar wastes may also be buried in other locations on the lot.

4.3 The clean-up will require a licensed environmental firm to perform the initial testing, waste clean-up, and final testing. The removed waste must be properly manifested and hauled off to a licensed hazardous waste disposal site. In addition, the lot must be restored to the specifications as prescribed by the U.S. Environmental Protection Agency ("EPA") and the Texas Commission on Environmental Quality ("TCEQ") regulations. These EPA and TCEQ certifications will likely require environmental testing and a series of technical reports to these agencies.

4.4 Pipes, tires, various types of metal equipment, concrete and debris are dumped

on the lot. These materials must be removed as well.

    4.5 At various times, defendant discharged or released harmful substances, including cancer-causing agents, into the soil and underground strata of the tracts of land described in paragraph 4.1 above. Defendant allowed hydrocarbons, paint wastes, or other dangerous substances to leak from above or be buried underneath the surface of the property as cited in paragraph 4.1 into the underlying and adjoining underground formations and strata. These harmful pollutants entered the soil and underground water tables and migrated underneath the ground into the same tract of land, as purchased by plaintiff. The waste contaminates exceeded the threshold action levels established by the TCEQ. The underground contamination caused harm and damage to plaintiff.

    4.6 Defendant's actions have substantially interfered with plaintiff's use and enjoyment of the property, and are the sort of actions that would cause unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy their property such as plaintiff. Without limiting the last sentence, the toxic waste that is on and beneath the tract of land purchased by the plaintiff include known carcinogens that are on the EPA list of cancer-causing agents. Defendant's actions have caused plaintiff to suffer the damages described more fully below.

    4.7 Defendant was negligent in failing to discharge its duty to exercise appropriate care in a safe, lawful, and prudent manner. defendant also duties under the common law and by statute (1) to prevent contamination from occurring in the first place; (2) to promptly investigate and determine the full extent and location of the soil and water affected by the

disposals occurring on the site; and (3) to clean up the leaks and contamination caused by defendant's operations. See 30 Tex. Admin. Code § 334.8.

    4.8 Defendant failed to fulfill the above duties, and failed to exercise care to ensure that the disposed wastes on its property prevented toxic wastes from entering land, or water sold to the plaintiff;   failed to prevent the discharge; failed to investigate the extent of the contamination after the discharges were discovered; failed to notify the purchasing landowner, plaintiff, of the discharges and the potential for harm; and failed to clean up the discharges or pay for the costs to test for the discharges.

    4.9 Paragraph 7.E. of the Unimproved Property Agreement dated August 3, 2016 states (emphasis added):

> *SELLER'S DISCLOSURES: Except as otherwise disclosed in this contract. Seller has no knowledge of the following.*
> *(1) any flooding of the Property which has had a material adverse effect on the use of the Property;*
> *(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property:*
> *<u>(3) any environmental hazards that materially and adversely affect the Property:</u>*
> *<u>(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property.</u>*
> *(5) any wetlands, as defined by federal or state law or regulation, affecting the Property: or*
> *(6) any threatened or endangered species or their habitat affecting the Property.*

## V CAUSES OF ACTION

    5.1. <u>Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")</u>. Defendant was in violation of and is liable for site clean-up costs under

21

CERCLA (42 U.S.C.A. §9607; Liability).[14] Under CERCLA (42 U.S.C.A. §9607(e)), defendant may not use a contract to indemnify himself from liability for a CERCLA release [15] (refer to Paragraph 4.9, above). Paragraph 7.C.2 of the Unimproved Property Agreement dated August 3, 2016 states: "Buyer accepts the Property As is, provided the Seller…." splits the cost of a fence with the Buyer.

<u>Texas Water Code. Sec. §26.039. Accidental Discharges and Spills</u>. Defendant was

---

[14] 42 U.S.C.A. § 9607; Liability. Effective: January 11, 2002.
(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date.
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 (1) the owner and operator of a vessel or a facility,
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.
The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.
[15] 42 U.S.C.A. § 9607. (e) Indemnification, hold harmless, etc., agreements or conveyances; subrogation rights.
(1) No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. (Under 42 U.S.C.A. § 9601. Definitions. Effective: January 11, 2002. (9) The term "facility" means (A) …, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.)

in violation of Texas Water Code Sec. §26.039[16] by failing to report the discharge of contamination onto her land within 24 hours of said occurrence. This violation precluded public notice of the contamination to any potential buyers, including the plaintiff.

    5.3 <u>Texas Fraud in Real Estate and Stock Transactions Act ("TFRESTA")</u>. The defendant violated the TFRESTA[17] by making a false representation of a past or existing material fact, which was made to induce the plaintiff to enter a contract, and was relied on

---

[16] Texas Water Code Sec. §26.039 (a) As used in this section:
(1) "Accidental discharge" means an act or omission through which waste or other substances are inadvertently discharged into water in the state.
(2) "Spill" means an act or omission through which waste or other substances are deposited where, unless controlled or removed, they will drain, seep, run, or otherwise enter water in the state.
(3) "Other substances" means substances which may be useful or valuable and therefore are not ordinarily considered to be waste, but which will cause pollution if discharged into water in the state.
(b) Except as provided by Subsection (g), whenever an accidental discharge or spill occurs at or from any activity or facility which causes or may cause pollution, the individual operating, in charge of, or responsible for the activity or facility shall notify the commission as soon as possible and not later than 24 hours after the occurrence. The individual's notice to the commission must include the location, volume, and content of the discharge or spill.
(c) Activities which are inherently or potentially capable of causing or resulting in the spillage or accidental discharge of waste or other substances and which pose serious or significant threats of pollution are subject to reasonable rules establishing safety and preventive measures which the commission may adopt or issue. The safety and preventive measures which may be required shall be commensurate with the potential harm which could result from the escape of the waste or other substances.
(d) The provisions of this section are cumulative of the other provisions in this chapter relating to waste discharges, and nothing in this section exempts any person from complying with or being subject to any other provision of this chapter.
(e) Except as provided by Subsection (g), if an accidental discharge or spill described by Subsection (b) from a wastewater treatment or collection facility owned or operated by a local government may adversely affect a public or private source of drinking water, the individual shall also notify appropriate local government officials and local media.
(f) The commission by rule shall specify the conditions under which an individual must comply with Subsection (e) and prescribe procedures for giving the required notice. The rules must also state the content of the notice and the manner of giving notice. In formulating the rules, the commission shall consider:
(1) the nature and extent of the discharge or spill;
(2) the potential effect of the discharge or spill; and
(3) regional information about the susceptibility of a particular drinking water source to a specific type of pollution.
[17] TEX. BUS. & COM. CODE ANN. § 27.01 (Vernon 1987) (Act of 1967, 60th Leg., R.S., Ch. 785, § 1, 1967 Tex. Gen. Laws 2343, amended by Act of 1983, 68th Leg., R.S., Ch. 949, §§ 1-2). In 1967, the Texas legislature created a specific statutory cause of action for buyers to recover from harm caused in fraudulent real estate transactions. Under the statute, fraud in a real estate transaction consists of a false representation of a past or existing material fact, made to induce a past or existing material fact, made to induce a person to enter a contract, and relied on by that person in entering the contract.

23

by the plaintiff in entering the contract (refer to Paragraph 4.9, above).

5.4 <u>Texas Deceptive Trade Practices Act ("TDTPA")</u>. The defendant violated TDTPA §17.46(b)(23). This subsection creates rights in a buyer for a seller's "failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed (refer to Paragraph 4.9, above).

5.5 <u>Fraudulent Misrepresentation</u>. Defendant made during the negotiations leading up to the sale, defendant, through its agents and employees, fraudulently represented to plaintiffs that the property was not contaminated (refer to Paragraph 4.9, above). The representations were made to induce plaintiffs to purchase the property. Further, the representations were made as to existing material facts and defendant intended that plaintiff rely on the representations. Such representations were knowingly made by the defendant and the defendant's agents and employees, and the agents and employees knew the representations were false when they made them. The representations each operated as a material inducement to plaintiffs to enter into the sales agreement. plaintiffs would not have executed the agreement but for the making of each false representation.

5.6 <u>Negligent Misrepresentation</u>. The defendant (1) supplied false information for the guidance of others in their business transaction (refer to Paragraph 4.9, above); (2) failed to exercise reasonable care or competence in obtaining or communicating the information; (3) the plaintiff justifiably relied on the false information; and (4) the plaintiff

thereby suffered pecuniary loss.

## VI DEMAND

6.1. Plaintiff made demand on defendant and presented his or her claims for reimbursement as described in Section 4.1 through 4.8 of this petition to defendant on or about April 3, 2017.

6.2. Defendant has refused to resolve this matter despite plaintiff's numerous attempts to resolve this dispute.

## VII DAMAGES

7.1. Damages sought by plaintiff are within the jurisdictional limits of this court. Plaintiff seeks non-monetary relief and monetary relief over $200,000 but not more than $1 million.

## VIII ATTORNEY'S FEES

8.1. Because of defendant's actions complained of in this Petition, plaintiff was required to engage the services of the law firm of The Law Office of C. William Smalling, PC.

(a) Plaintiff therefore seeks reimbursement of reasonable attorney's fees, since plaintiff has been required to employ the undersigned attorneys to file and prosecute this suit.

(b) Plaintiff has agreed to pay the undersigned attorneys a reasonable fee for their services.

8.2. Plaintiff reserves the right to plead and prove its legal fees and costs of court at

the time of trial.

### IX APPLICATION FOR TEMPORARY INJUNCTION

9.1. Plaintiff would show that the property down payment plus monthly property payments to the defendant are estimated to be $70,000 cash.

9.2. Plaintiff accordingly prays for a temporary injunction to require defendant to place the property down payment plus monthly property payments in an escrow account until this matter is resolved.

### PRAYER

Plaintiff prays that defendant be cited to appear and answer the allegations contained in this Petition and that after notice and hearing defendant be temporarily enjoined and restrained from using in any manner whatsoever for commercial or personal use, transferring, or otherwise disposing of any of the property down payment plus monthly property payments to the defendant, which are estimated to be $70,000 cash ($60,000 down payment plus approximately $10,000 in financing payments), pursuant to Paragraph 3 of the Unimproved Property Agreement dated August 3, 2016.

Plaintiff further prays for:

(a) non-monetary relief and monetary relief over $200,000 but not more than $1 million;

(b) court costs expended in plaintiff's behalf;

(c) attorney's fees as pleaded and proved at the time of trial;

(e) prejudgment and post judgment interest at the maximum rate allowed by law;

26

and

      (f) all other just relief, at law or in equity, to which plaintiff is duly entitled.

Dated: June 20, 2017
Respectfully submitted,
*/s/ Bill Smalling*
Bill Smalling, J.D.; LL.M.
Attorney for Plaintiff
THE LAW OFFICE OF C. WILLIAM SMALLING, PC
1700 Post Oak Blvd., 2 BLVD Place, Suite 600
Houston, Texas 77056
(713) 513-7153 FAX (866) 738-0042
bsmalling@billsmallinglaw.com
State bar number of plaintiff's attorney - 24075086

## ACKNOWLEDGMENT

**STATE OF TEXAS** §
§
§
**COUNTY OF HARRIS** §

BEFORE ME, the undersigned authority, on this date personally appeared C. William (Bill) Smalling, known to me, who being by me first duly sworn on his oath to tell the truth stated and deposed that he is the attorney for the plaintiff in the above-entitled and -numbered cause, and that in that capacity he has full authority to make this affidavit and is fully competent to make the same, that he has read the foregoing Petition and Application for Temporary Injunction; that he is familiar with the matter and facts stated there; and that the same are on her personal knowledge true and correct.

GIVEN under my hand and seal of this office 20th day of June 2017.

_____
NOTARY PUBLIC IN AND FOR
STATE OF TEXAS

_____
Printed Name of Notary
My Commission Expires: _____

PLEASE RETURN TO:
Bill Smalling, J.D.; LL.M.
Attorney for Plaintiff
THE LAW OFFICE OF C. WILLIAM SMALLING, PC
1700 Post Oak Blvd., 2 BLVD Place, Suite 600
Houston, Texas 77056
(713) 513-7153 FAX (866) 738-0042
bsmalling@billsmallinglaw.com
State bar number of plaintiff's attorney - 24075086

**CERTIFICATE OF SERVICE**

I, Bill Smalling, the attorney of record for plaintiff, certify that on June 20, 2017, a copy of this pleading was sent by process server, to Delores Barnes, the defendant, at 7012 Banyan Street, Houston, Texas 77028, Harris County, Texas.

*/s/ Bill Smalling*_____
Bill Smalling, J.D.; LL.M.
Attorney for Plaintiff
THE LAW OFFICE OF C. WILLIAM SMALLING, PC
1700 Post Oak Blvd., 2 BLVD Place, Suite 600
Houston, Texas 77056
(713) 513-7153 FAX (866) 738-0042
bsmalling@billsmallinglaw.com
State bar number of plaintiff's attorney - 24075086